[No. 1499.]

KRATZER v. ALLEN.

ELECTIONS—POLITICAL PARTIES—EMBLEMS.
A political party may under the statute authorizing it to designate its list of candidates by an appropriate emblem or design, adopt as its emblem the portrait of one of its candidates.

*Appeal from the District Court of Arapahoe County.*

Mr. D. V. BURNS, for appellants.

Mr. JOHN R. SMITH, *amicus curiæ.*

THOMSON, P. J., delivered the opinion of the court.

In March, 1897, a political organization, known as " The National Silver Party," nominated certain persons to fill municipal offices in the city of Denver, to be voted for at the city election to be held on April 6, 1897. The appellee was city clerk of that city. A petition setting forth the nominations, properly certified, and containing the requisite signatures was filed with the appellee, as city clerk, pursuant to law. Thomas S. McMurray was the candidate named for mayor. The certificate set forth, as the emblem or design of the party to be placed on the official ballots, the portrait of its candidate for mayor. A protest was filed with the city clerk by certain persons against the use of that emblem ; the protest was sustained by him on the ground that the emblem was not appropriate, and a petition was thereupon filed in the district court of Arapahoe county by representatives of

the party, setting forth the filing with the city clerk of the nominating petition, the certification of the emblem selected, the protest against its use, and the ruling of the clerk on the protest, and praying an order commanding the clerk to use the emblem in the preparation of the ballots for the ensuing election. Upon the hearing the court denied the application, and dismissed the petition, the petitioners having brought the case here by appeal.

The only question in the case is whether the portrait of its candidate for mayor was an appropriate emblem of the party, to be placed upon the official ballots, within the meaning of the law. The statute on the subject is as follows: "It shall be lawful to designate the political party, or nominating committee, by which each list of candidates is nominated, by an appropriate emblem or design, such as a flag, eagle, rooster, or other device, as may be set forth in the certificate of nomination; Provided, no two sets of nominations shall use or have the same device, and each political party, or nominating committee, shall have the prior right to use the device used by it at the last similar election." Session Laws, 1894, p. 62.

There is no contention that the use of the portrait of a man is inappropriate as an emblem, because it is in contravention of public policy or public morals. But it is contended, first, that the words, "such as a flag, eagle, rooster, or other device," limit the character of the emblem authorized; and, second, that as each political party has the prior right to an emblem once used by it, and as the candidate of the Silver party at that election, might, at some future election, be a member of another and hostile party, the employment of his picture as an emblem would be improper, because the course of events might reduce the prior right which the statute gives the party to an absurdity.

1. We are not disposed to accept the conclusions which counsel has drawn from the language of the statute. We think the only limitation upon the character of the emblem, intended by the legislature, is to be found in the word "ap-

propriate." The statute names a flag, rooster and eagle, as examples of appropriate emblems, but an ascertainment of the meaning the legislature intended to convey by the term "appropriate," will enable us to determine the significance to be attached to the examples. Generally speaking, a party emblem may be said to be appropriate, if, in itself, it is suggestive of the political doctrines which the organization advocates. But that the legislature did not use the word in any such sense as this, is manifest from the nature of the objects named as proper emblems; because none of them possess any inherent characteristic which would direct the mind to a particular organization, or a particular political idea. There is no traceable resemblance between a rooster and the tenets of the Democratic party as they are generally understood; and the same may be said of a flag, or eagle, in connection with the party which has adopted it. None of these is an appropriate emblem in the sense that by virtue of characteristics peculiar to itself, it is indicative of some especial theory of governmental policy. We must therefore seek elsewhere for the meaning of the word "appropriate."

The flag, eagle and rooster, might readily have occurred to the lawmakers as examples of emblems, because each of them had, for a considerable time, been the chosen symbol of a political organization, and by association merely, had come to be representative of a party. If instead of the picture of an eagle, the Republican party had adopted the portrait of Lincoln, or if instead of the representation of a rooster, the Democratic party had chosen the likeness of Jefferson, then it is probable that for the very reason that the eagle and rooster were instanced, — namely, their long use, — the pictures of these statesmen would have been named. As from the examples given we think it clear that the term "appropriate" was not designed to convey any idea of peculiar fitness, there is but one other meaning of which it is susceptible, and that may be approximated by the word "proper." There are certain representations, the printing or publication of which is improper, and forbidden. Such

would not be appropriate emblems, because they would be improper; but any device which conforms to the accepted and legal standards of propriety, would surely be appropriate. A flag, eagle and rooster are entirely proper as symbols; they were selected as examples, presumably, for the sole reason that use had made them familiar; and except as instances of devices, the propriety of which could not be questioned, they were not intended to have any special significance. A new political organization, not being allowed to adopt a symbol to which another party has a prior right, must seek a new device. On the ballots that device must be a picture of something; and why the picture of a man is not as suitable as the picture of an eagle, we are unable to discover either in reason or law.

2. We concede that a man may experience a revolution in his opinions, and may so change his attitude politically, that his likeness which at one time was a fitting device for the party to which he adhered, would afterwards, in the same relative situation, be ridiculous. In such case the party would not be likely to insist on its prior right to the emblem, although its doing so would be merely a matter of taste, for which it could not be called to account by reason of anything contained in the statute. But the statute does not contemplate that a party shall be bound by its first selection. It may choose a new device for each election, the only requirement being that the emblem chosen shall be appropriate, properly certified, and not one upon which another party has a prior claim. The Democratic party may discard its rooster, and the republican party its eagle, and select something else as representative of its organization, in perfect harmony with the language and purpose of the statute.

We do not think the objections to the picture of Mr. McMurray, as an emblem of the National Silver party well taken, and we must therefore reverse the judgment.

*Reversed.*